# Exhibit A



**FUNCTIONAL GOVERNMENT INITIATIVE**

September 1, 2023

<u>Submitted via securerelease.us</u>

Privacy Office, Mail Stop 0655
Department of Homeland Security
2707 Martin Luther King Jr. Ave SE
Washington, DC 202528-065

Re:     Records relating to colorful wristbands found near the southern border that are used for
         human smuggling and trafficking purposes.

Dear Freedom of Information Act Officer:

The Functional Government Initiative (FGI) submits this request for records under the Freedom of
Information Act, 5 U.S.C. § 552, as amended (FOIA), and the relevant implementing regulations of
the Department of Homeland Security. FGI, a non-partisan organization, engages in research,
investigation, and education to promote transparency in government.

Your prompt response pursuant to the requirements of FOIA, 5 U.S.C. § 522(a)(6)(A), is
appreciated.

<u>BACKGROUND</u>

Thousands of colorful wristbands have been found along routes near the southern border with
Mexico where migrants are known to cross illegally into the United States. The wristbands have
been reported to be part of an organizational system used by Mexican cartels to identify groups of
migrants that they smuggle across the border for tracking, repayment, and trafficking purposes.[1]
There is concern amongst the public that drug cartels are developing such identification techniques
to increasingly accrue money and influence to engage in illicit and dangerous activity across the
southern border.

<u>REQUESTED RECORDS</u>

FGI requests from the Department of Homeland Security all records from August 30, 2022, to the
date the search begins about wristbands or other similar methods of tracking migrants. The
following terms are provided to aid the search:

- Wristbands
- Bracelets
- Armbands
- Identification Markers

---

[1] For example, see https://www.borderreport.com/immigration/border-crime/cruz-says-wristbands-smugglers-use-to-track-migrants-are-like-leg-irons/

- Wrist Tags
- Wrist Identifiers
- Migrant Tags

Please search the records of the following custodians from the Office of the Secretary:

- Secretary, Alejandro Mayorkas
- Former Deputy Secretary, John Tien
- Deputy Secretary (acting) / Chief of Staff, Kristie Canegallo
- Chief of Staff, Jonathan Davidson
- General Counsel, Jonathan E. Meyer
- Assistant Secretary for Public Affairs, Marsha Espinosa

If anyone else held the positions in the time of the request, please include their records in the search.

The term "all records" in this request refers to letters, correspondence, emails including attachments, calendars, electronic meeting invitations and replies, facsimiles, memoranda, text messages (including messages on encrypted apps such as Signal or WhatsApp), notes from meetings and phone calls, minutes of meetings, agendas of meetings, comments, files, presentations, consultations, drawings, diagrams, graphs, charts, assessments, evaluations, telephone records and logs, virtual meeting logs (such as those produced by Microsoft Teams and Zoom), papers (published or unpublished), reports, studies, photographs and other images, databases, data, maps, or all other responsive records in draft or final form that fall within the definition of "agency records" subject to FOIA. This request is not meant to exclude any other records that, although not specifically requested, are reasonably related to the subject matter of this request.

We ask that you please provide all records in an electronic format and, to the extent practicable, in native file format or, if not practicable, with full metadata for all fields. FOIA provides that "an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."[2] Please provide records in either a load-ready format with an index in .csv file or Excel spreadsheet, or in PDF format without any portfolios or embedded files and not in a single batched pdf file.

If you should seek to withhold or redact any responsive records, we request that you do the following:

1. Identify each such record with specificity, including date, author, recipient, and parties copied,
2. Explain in full the basis for withholding responsive material,
3. Provide all segregable portions of the records for which you claim a specific exemption[3], and
4. Correlate any redactions with specific exemptions under FOIA.

If you or your office have destroyed or decide to withhold any records that could be reasonably construed to be responsive to this request, please indicate this fact and state the reasons for doing

---

[2] 5 U.S.C. § 552(a)(3)(B).
[3] See 5 U.S.C. § 552(b).

so in your response. Agencies are prohibited from denying requests for information under FOIA unless the agency reasonably believes release of the information will harm an interest that is protected by the exemption.[4]

Should you decide to invoke a FOIA exemption or any subsection (c) exclusions, please include sufficient information for us to assess the basis for the exemption, including any interests that would be harmed by release. Please include a detailed ledger with the following:

1. Basic factual material about each withheld record, including the originator, date, length, general subject matter, and location of each item, and
2. Complete justifications for each withheld records, including the specific exemptions under which the record or portion thereof, was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination. Your written justifications may help to avoid litigation.

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and send the non-exempt portions to my email address below within the statutory time limit.[5]

FGI is willing to receive records on a rolling basis.

To facilitate our request most efficiently, we request that the FOIA office use the agency's email management system as part of the search for this request.

<u>REQUEST FOR FEE WAIVER</u>

Pursuant to 5 U.S.C. § 552 and the relevant FOIA regulations, we request a waiver of fees for searching and producing the requested records. FOIA provides for a waiver of fees when a request is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." [6]

Below are details explaining (1) how the disclosure of the requested records is in the public interest, (2) that FGI intends distribute information to a broad audience of interested persons, and (3) that FGI has no commercial interests.

In addition, FGI is a "person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience" and thus qualifies as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii). Below are details explaining (4) how FGI clearly meets these criteria.

1. <u>THE REQUEST IS IN THE PUBLIC INTEREST.</u>

Under FOIA, an agency must consider factors to determine whether a request is in the public interest. These include the following:

---

[4] FOIA Improvement Act of 2016 (Public Law No. 114-185), 5 U.S.C. § 552(a)(8)(A).
[5] 5 U.S.C. § 552(b).
[6] 5 U.S.C. § 552(a)(4)(A)(iii).

A. Whether the subject of the requested records concerns "the operations or activities of the Federal government,"

B. Whether the disclosure is "likely to contribute significantly" to an understanding of government operations or activities, and

C. Whether the disclosure "will contribute to public understanding" of a reasonably broad audience of persons interested in the subject.

As shown below, FGI meets each of these factors.

**A. The requested records concern the operations and activities of the Federal government.**

This request relates to the operations and activities of federal government. The Department of Justice Freedom of Information Act Guide acknowledges that "in most cases records possessed by a federal agency will meet this threshold."[7] Thus, FGI meets this factor.

**B. Disclosure is "likely to contribute significantly" to an understanding of government operations or activities.**

Disclosure of the requested records is certain to contribute to public understanding of the smuggling of migrants across the southern border. The requested records would give more insight into the growing crisis at our southern border and steps being taken to curb dangerous activity. Once the information is made available, FGI will evaluate the information and present it to its followers and make it available to the public. Once the information is made available, FGI will evaluate the information and present it to its followers and make it available to the public.

FGI is not requesting these records merely for their intrinsic informational value. The public is always well served when it knows how the government conducts its activities, and the requested records would provide insight in how important decisions were made by federal officials. Hence, there can be no dispute that disclosure of the requested records to the public will significantly increasing the public's understanding about the agency's actions and decisions and whether agency actions were conducted in an objective and legal way.

Thus, FGI meets this factor.

**C. Disclosure of the requested records will contribute to the understanding of a reasonably broad audience.**

FGI has the ability and intention to convey this information to a broad audience by means discussed below. A broad audience is following the current state of our border and the potential public safety threat from the smuggling of migrants across the southern border. The requested information would give the public an increased understanding of what actions are being taken by the DHS in response to illicit and dangerous activity.

Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA. Thus, FGI meets this factor.

---

[7] https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/fees-feewaivers.pdf

## 2. FGI HAS THE ABILITY AND INTENT TO DISSEMINATE THE INFORMATION TO A REASONABLY BROAD AUDIENCE INTERESTED IN THE SUBJECT.

FGI is a non-partisan organization that researches government operations and informs the public its findings. Access to information about the activities and decisions of government officials is vital to fulfilling this mission. Once the information is obtained, FGI has robust mechanisms in place, including its website, social media channels, and other platforms, to share information. FGI intends to use its channels to publish the information from these requested records, along with expert analysis. FGI also has a broad network of reporters, bloggers, and media publications with interest in its content and with durable relationships with the organization. FGI intends to use these far-reaching media outlets to publicize information obtained from this request.

Through these means, FGI's dissemination of the information will do the following:

- Ensure that the information requested contributes significantly to the public's understanding of the government's operations or activities,
- Ensure that the information enhances the public's understanding to a greater degree than currently exists,
- Demonstrate that FGI possesses the expertise to explain the requested information to the public,
- Demonstrate that FGI possesses the ability to make the requested information accessible to the general public, and
- Demonstrate that the news media recognizes FGI as a reliable source in the relevant fields.

In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject.[8] FGI need not show how it intends to distribute the information, because, as the court noted, "nothing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity."[9] It is sufficient for FGI to show how it distributes information to the public generally.[10]

## 3. OBTAINING THE REQUESTED RECORDS IS OF NO COMMERCIAL INTEREST TO FGI.

Disclosure is in no way connected with any commercial interest of the requestors. FGI is a non-partisan organization. FGI has no commercial interest and will realize no commercial benefit from the release of the requested records.

## 4. FGI IS A REPRESENTATIVE OF THE NEWS MEDIA.

Under FOIA, the term "representative of the news media" includes any person or entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[11]  In *Cause of Action v. Federal Trade Commission*, the Court of Appeals for the District of Columbia broke the test for who is a media entity into five parts: "A requester must: (1) gather information of potential interest (2) to a segment of the public; (3) use its editorial skills to turn the raw materials into a

---

[8] *Carney v U.S. Dept. of Justice*, 19 F.3d 807 (2nd Cir. 1994).
[9] *Judicial Watch*, 326 F.3d at 1314.
[10] *Id.*
[11] 5 U.S.C. § 552(a)(4)(A)(ii).

distinct work; and (4) distribute that work (5) to an audience."[12] [13]

In interpreting this test, the court noted that "the news-media waiver... focuses on the nature of the *requester*, not its request."[14] Accordingly, when a requester "satisfies the five criteria as a general matter, it does not matter whether any of the individual FOIA requests does so."[15]  Moreover, the media entity waiver applies to newer organizations as well as older ones, as the court noted: "there is no indication that Congress meant to make the lack of a prior publication record disqualifying when it enacted the statutory definition in 2007."[16]

### A.  FGI gathers information of potential interest.

FGI's mission is to demand transparency and promote shared values and beliefs in a thriving economy, a government that serves the public, a strong workforce, and a safe and clean environment. As part of this mission, FGI engages in investigations and education initiatives around important issues, including high energy prices, the government's COVID-19 response, and government transparency. These are topics of broad public interest, as evidenced by the fact that multiple news outlets have written stories on FGI's work. You can see several FGI's media mentions at https://functionalgovernment.org/category/media-mentions/.

### B.  FGI gathers information of interest to a segment of the public.

As demonstrated above, the information that FGI gathers is of interest to a segment of the public. This includes but is not limited to the segment of the public concerned with government transparency. The size of the segment of the public interests in any particularly information gathering project may vary, however, as the court has noted, "[a] newspaper reporter, for example, is a representative of the news media regardless of how much interest there is in the story for which he or she is requesting information."[17] Moreover, as long as FGI "satisfies the five criteria as a general matter, it does not matter whether any of the individual FOIA requests does so."[18]

As set forth above, FGI believes that this request is of interest to a reasonably broad segment of the public. Even if the agency disagrees, however, there can be no doubt that other issues about which FGI gathers information, such as drivers of inflation in the United States, energy prices, government transparency and more, are of interest to a significant audience.

Accordingly, FGI is an organization that gathers information of interest to a segment of the population.

### C.  FGI uses its editorial skills to turn raw materials into distinct works.

As the D.C. Circuit Court has stated, "A substantive press release or editorial comment can be a

---

[12] 799 F.3d 1108, 1120 (D.C. Cir. 2015).

[13] The court further noted that "the news-media fee waiver applies only to records that 'are not sought for commercial use.'" *Cause of Action*, 700 F.3d at 1120. For the reasons set forth in section 3 above, FGI is not requesting these records for commercial use.

[14] 799 F.3d 1108, 1120 (D.C. Cir. 2015) at 1121 (emphasis in the original).

[15] *Id.*

[16] *Id.* at 1124.

[17] *Cause of Action*, 799 F.3d at 1121.

[18] *Id.*

distinct work based on the underlying material, just as a newspaper article about the same documents would be — and its composition can involve 'a significant degree of editorial discretion.'"[19] Furthermore, "nothing in principle prevents a journalist from producing 'distinct work' that is based exclusively on documents obtained through FOIA."[20]

FGI is an entity that uses its editorial skills to turn raw materials into distinct works. It routinely issues substantive press releases detailing its activities, posted at [functionalgovernment.org](functionalgovernment.org). These press releases have included substantive analysis of the information gathered by FGI with a significant degree of editorial discretion. FGI has also prepared detailed reports, posted on its website, and FGI provides substantive editorial comment to other journalists, with many news clips posted on website, as well.

Like a newspaper or other media outlet, FGI uses its editorial skills to turn raw materials into distinct works and intends to do so for other subjects as it gathers additional information. Thus, FGI meets this test.

### D.  FGI distributes its work to an audience.

For purposes of FOIA, "posting content to a public website can qualify as a means of distributing it — notwithstanding that readers have to affirmatively access the content, rather than have it delivered to their doorsteps or beamed into their homes unbidden."[21] Moreover, while "[t]here is no doubt that the requirement that a requester distribute its work to 'an audience' contemplates that the work is distributed to more than a single person… beyond requiring that a person or entity have readers (or listeners or viewers), the statute does not specify what size the audience must be."[22] Additionally, "[t]he fact that [a media entity's] readership is relatively small … is irrelevant."[23]

Assessing whether a media entity distributes its work to an audience includes consideration of "past record, current operations, and future plans jointly."[24]

In addition, the court rejected "the suggestion that a public interest advocacy organization cannot satisfy the statute's distribution criterion because it is 'more like a middleman for dissemination to the media than a representative of the media itself,'" concluding "there is no indication that Congress meant to distinguish between those who reach their ultimate audiences directly and those who partner with others to do so, as some recognized journalistic enterprises do."[25]

FGI will continue to use its website to distribute original editorial content, including press releases. FGI has email subscribers and intends to establish a greater social media presence to reach its audience directly. In addition, FGI has durable relationships with a broad network of reporters, bloggers, and media publications interested in its content and with whom FGI has partnered to distribute its distinct editorial commentary.

---

[19] *Cause of Action*, 799 F.3d 1122 (quoting *Nat. Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989)).
[20] *Id.*
[21] *Cause of Action*, 799 F.3d at 1123.
[22] *Id*. at 1124 (footnote omitted).
[23] *Id*. at 1124 (quoting *Tax Analysts v. Dept. of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992)).
[24] *Id*. at 1124.
[25] *Id*. at 1125 (citations omitted).

Accordingly, FGI distributes its work to an audience.

    **E.  FGI qualifies as a representative of the news media.**

Under the applicable law, a government accountability group such as FGI qualifies as a media organization for purposes of FOIA when it gathers information of potential interest and uses it to create original content, which can be as simple as issuing a press release or comment to other media organizations, and distributes it, which can be as simple as posting it on a website with an audience greater than one. This is true even if an organization does not have a long track record.

Accordingly, under the standard set forth in FOIA and interpreted in *Cause of Action*, FGI clearly qualifies as a representative of the news media.

FGI QUALIFIES FOR A FULL FEE WAIVER.

For all the foregoing reasons, FGI qualifies for a full fee waiver. At minimum, FGI qualifies as a representative of the news media that is exempt from search and production costs. We anticipate that you will promptly grant our fee waiver request and begin to search and disclose the requested records without any unnecessary delays.

Thank you for your prompt attention to this request. If you have any questions, please contact me. Records and any related correspondence should be sent to my attention to the email address below.

        Sincerely,

        Chris Stanley
        Director
        Functional Government Initiative
        6218 Georgia Avenue NW, Ste 1 - 1235
        Washington, DC 20011-5125
        chris@functionalgovernment.org

Exhibit B

**U.S. Department of Homeland Security**
Washington, DC 20528

 Homeland
Security

November 15, 2023

<u>SENT VIA E-MAIL TO:  chris@functionalgovernment.org</u>
Chris Stanley
Functional Government Initiative
6218 Georgia Avenue NW, Ste 1 - 1235
Washington, District of Columbia 20011-5125

**Re:  2023-HQFO-02194**

Dear Requester:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), dated 9/1/2023, and to your request for a waiver of all assessable FOIA fees. Our office received your request on 9/1/2023.  Specifically, you requested:

all records from August 30, 2022, to the date the search begins about wristbands or other similar methods of tracking migrants. The following terms are provided to aid the search:

- Wristbands
- Bracelets
- Armbands
- Identification Markers
- Wrist Tags
- Wrist Identifiers
- Migrant Tags

Please search the records of the following custodians from the Office of the Secretary:

- Secretary, Alejandro Mayorkas
- Former Deputy Secretary, John Tien
- Deputy Secretary (acting) / Chief of Staff, Kristie Canegallo
- Chief of Staff, Jonathan Davidson
- General Counsel, Jonathan E. Meyer
- Assistant Secretary for Public Affairs, Marsha Espinosa

If anyone else held the positions in the time of the request, please include their records in the search.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request.  Consistent with 6 C.F.R. Part 5 § 5.5(a) of the DHS FOIA regulations, the Department processes FOIA requests according to their order of receipt.  Although DHS' goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances under 6 C.F.R. Part 5 § 5.5(c). As your request seeks documents that will require a thorough and wide-ranging search, DHS will invoke a 10-day extension for your request pursuant to 6 C.F.R. Part 5 § 5.5(c). If you would like to narrow the scope of your request, please contact our office.  We will make every effort to comply with your request in a timely manner.

You have requested a fee waiver.  The DHS FOIA regulations at 6 C.F.R. Part 5 § 5.11(k) set forth six factors DHS must evaluate to determine whether the applicable legal standard for a fee waiver has been met: (1) Whether the subject of the requested records concerns "the operations or activities of the government," (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons, (4) Whether the contribution to public understanding of government operations or activities will be "significant," (5) Whether the requester has a commercial interest that would be furthered by the requested disclosure, and (6) Whether the magnitude of any identified commercial interest to the requester is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requester.

Upon review of the subject matter of your request, and an evaluation of the six factors identified above, DHS has determined that it will conditionally grant your request for a fee waiver.  The fee waiver determination will be based upon a sampling of the responsive documents received from the various DHS program offices as a result of the searches conducted in response to your FOIA request.  DHS will, pursuant to DHS FOIA regulations applicable to media requesters, process the first 100 pages free of charge.  If upon review of these documents, DHS determines that the disclosure of the information contained in those documents does not meet the factors permitting DHS to waive the fees, then DHS will at that time either deny your request for a fee waiver entirely or will allow for a percentage reduction in the amount of the fees corresponding to the amount of relevant material found that meets the factors allowing for a fee waiver.  In either case, DHS will promptly notify you of its final decision regarding your request for a fee waiver and provide you with the responsive records as required by applicable law.

In the event that your fee waiver is denied, and you determine that you still want the records, provisions of the FOIA allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the DHS FOIA regulations as they apply to media requesters.  As a media requester you will be charged 10 cents per page for duplication; the first 100 pages are free.  In the event that your fee waiver is denied, we will construe the submission of your request as an agreement to pay up to $25.00.  This office will contact you before accruing any additional fees.

We have queried the appropriate component(s) of DHS for responsive records.  If any responsive records are located, they will be reviewed for determination of releasability.  Please be assured that one of the analysts in our office will respond to your request as expeditiously as possible.  We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2023-HQFO-02194.**  Please refer to this identifier in any future correspondence.  If you have any questions, or would like to discuss this matter, please feel free to contact this office at 1-866-431-0486 or 202-343-1743.

Sincerely,

Jimmy Wolfrey
Senior Director, FOIA Operations and Management

# Exhibit C



**FUNCTIONAL GOVERNMENT
INITIATIVE**

September 1, 2023

<u>Submitted via securerelease.us.</u>

FOIA Officer
U.S. Customs and Border Protection
90 K Street, NE
FOIA Division
Washington, DC 20229

Re:    Records relating to colorful wristbands found near the southern border that are used for
        human smuggling and trafficking purposes.

Dear Freedom of Information Act Officer:

The Functional Government Initiative (FGI) submits this request for records under the Freedom of
Information Act, 5 U.S.C. § 552, as amended (FOIA), and the relevant implementing regulations of
the Department of Homeland Security. FGI, a non-partisan organization, engages in research,
investigation, and education to promote transparency in government.

Your prompt response pursuant to the requirements of FOIA, 5 U.S.C. § 522(a)(6)(A), is
appreciated.

BACKGROUND

Thousands of colorful wristbands have been found along routes near the southern border with
Mexico where migrants are known to cross illegally into the United States. The wristbands have
been reported to be part of an organizational system used by Mexican cartels to identify groups of
migrants that they smuggle across the border for tracking, repayment, and trafficking purposes.[1]
There is concern amongst the public that drug cartels are developing such identification techniques
to increasingly accrue money and influence to engage in illicit and dangerous activity across the
southern border.

REQUESTED RECORDS

FGI requests from the United States Customs and Border Protection all records from August 30,
2022, to the date the search begins about wristbands or other similar methods of tracking migrants.
The following search terms are provided to aid the search:

- Wristbands
- Bracelets
- Armbands
- Identification Markers

---

[1] For example, see https://www.borderreport.com/immigration/border-crime/cruz-says-wristbands-smugglers-
use-to-track-migrants-are-like-leg-irons/

- Wrist Tags
- Wrist Identifiers
- Migrant Tags

Please search the records of the following custodians:

- Former Commissioner, Chris Magnus
- Acting Commissioner, Troy Miller
- Executive Director of the Office of Intergovernmental Public Liaison, Tim Quinn
- Assistant Commissioner, Erin Waters
- Chief of Border Patrol, Jason Owens
- Former Chief of Border Patrol, Raul Ortiz

The term "all records" in this request refers to letters, correspondence, emails including attachments, calendars, electronic meeting invitations and replies, facsimiles, memoranda, text messages (including messages on encrypted apps such as Signal or WhatsApp), notes from meetings and phone calls, minutes of meetings, agendas of meetings, comments, files, presentations, consultations, drawings, diagrams, graphs, charts, assessments, evaluations, telephone records and logs, virtual meeting logs (such as those produced by Microsoft Teams and Zoom), papers (published or unpublished), reports, studies, photographs and other images, databases, data, maps, or all other responsive records in draft or final form that fall within the definition of "agency records" subject to FOIA. This request is not meant to exclude any other records that, although not specifically requested, are reasonably related to the subject matter of this request.

We ask that you please provide all records in an electronic format and, to the extent practicable, in native file format or, if not practicable, with full metadata for all fields. FOIA provides that "an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."[2] Please provide records in either a load-ready format with an index in .csv file or Excel spreadsheet, or in PDF format without any portfolios or embedded files and not in a single batched pdf file.

If you should seek to withhold or redact any responsive records, we request that you do the following:

1. Identify each such record with specificity, including date, author, recipient, and parties copied,
2. Explain in full the basis for withholding responsive material,
3. Provide all segregable portions of the records for which you claim a specific exemption[3], and
4. Correlate any redactions with specific exemptions under FOIA.

If you or your office have destroyed or decide to withhold any records that could be reasonably construed to be responsive to this request, please indicate this fact and state the reasons for doing so in your response. Agencies are prohibited from denying requests for information under FOIA unless the agency reasonably believes release of the information will harm an interest that is

---

[2] 5 U.S.C. § 552(a)(3)(B).
[3] See 5 U.S.C. § 552(b).

protected by the exemption.[4]

Should you decide to invoke a FOIA exemption or any subsection (c) exclusions, please include sufficient information for us to assess the basis for the exemption, including any interests that would be harmed by release. Please include a detailed ledger with the following:

1. Basic factual material about each withheld record, including the originator, date, length, general subject matter, and location of each item, and
2. Complete justifications for each withheld records, including the specific exemptions under which the record or portion thereof, was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination. Your written justifications may help to avoid litigation.

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and send the non-exempt portions to my email address below within the statutory time limit.[5]

FGI is willing to receive records on a rolling basis.

To facilitate our request most efficiently, we request that the FOIA office use the agency's email management system as part of the search for this request.

<u>REQUEST FOR FEE WAIVER</u>

Pursuant to 5 U.S.C. § 552 and the relevant FOIA regulations, we request a waiver of fees for searching and producing the requested records. FOIA provides for a waiver of fees when a request is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." [6]

Below are details explaining (1) how the disclosure of the requested records is in the public interest, (2) that FGI intends distribute information to a broad audience of interested persons, and (3) that FGI has no commercial interests.

In addition, FGI is a "person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience" and thus qualifies as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii). Below are details explaining (4) how FGI clearly meets these criteria.

1. <u>THE REQUEST IS IN THE PUBLIC INTEREST.</u>

Under FOIA, an agency must consider factors to determine whether a request is in the public interest. These include the following:

A. Whether the subject of the requested records concerns "the operations or activities of the

---

[4] FOIA Improvement Act of 2016 (Public Law No. 114-185), 5 U.S.C. § 552(a)(8)(A).
[5] 5 U.S.C. § 552(b).
[6] 5 U.S.C. § 552(a)(4)(A)(iii).

Federal government,"
B.  Whether the disclosure is "likely to contribute significantly" to an understanding of government operations or activities, and
C.  Whether the disclosure "will contribute to public understanding" of a reasonably broad audience of persons interested in the subject.

As shown below, FGI meets each of these factors.

**A. The requested records concern the operations and activities of the Federal government.**

This request relates to the operations and activities of federal government. The Department of Justice Freedom of Information Act Guide acknowledges that "in most cases records possessed by a federal agency will meet this threshold."[7] Thus, FGI meets this factor.

**B. Disclosure is "likely to contribute significantly" to an understanding of government operations or activities.**

Disclosure of the requested records is certain to contribute to public understanding of the smuggling of migrants across the southern border. The requested records would give more insight into the growing crisis at our southern border and steps being taken to curb dangerous activity. Once the information is made available, FGI will evaluate the information and present it to its followers and make it available to the public. Once the information is made available, FGI will evaluate the information and present it to its followers and make it available to the public.

FGI is not requesting these records merely for their intrinsic informational value. The public is always well served when it knows how the government conducts its activities, and the requested records would provide insight in how important decisions were made by federal officials. Hence, there can be no dispute that disclosure of the requested records to the public will significantly increasing the public's understanding about the agency's actions and decisions and whether agency actions were conducted in an objective and legal way.

Thus, FGI meets this factor.

**C. Disclosure of the requested records will contribute to the understanding of a reasonably broad audience.**

FGI has the ability and intention to convey this information to a broad audience by means discussed below. A broad audience is following the current state of our border and the potential public safety threat from the smuggling of migrants across the southern border. The requested information would give the public an increased understanding of what actions are being taken by the DHS in response to illicit and dangerous activity.

Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA. Thus, FGI meets this factor.

2. FGI HAS THE ABILITY AND INTENT TO DISSEMINATE THE INFORMATION TO A REASONABLY BROAD AUDIENCE INTERESTED IN THE SUBJECT.

---

[7] https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/fees-feewaivers.pdf

FGI is a non-partisan organization that researches government operations and informs the public its findings. Access to information about the activities and decisions of government officials is vital to fulfilling this mission. Once the information is obtained, FGI has robust mechanisms in place, including its website, social media channels, and other platforms, to share information. FGI intends to use its channels to publish the information from these requested records, along with expert analysis. FGI also has a broad network of reporters, bloggers, and media publications with interest in its content and with durable relationships with the organization. FGI intends to use these far-reaching media outlets to publicize information obtained from this request.

Through these means, FGI's dissemination of the information will do the following:

- Ensure that the information requested contributes significantly to the public's understanding of the government's operations or activities,
- Ensure that the information enhances the public's understanding to a greater degree than currently exists,
- Demonstrate that FGI possesses the expertise to explain the requested information to the public,
- Demonstrate that FGI possesses the ability to make the requested information accessible to the general public, and
- Demonstrate that the news media recognizes FGI as a reliable source in the relevant fields.

In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject.[8] FGI need not show how it intends to distribute the information, because, as the court noted, "nothing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity."[9] It is sufficient for FGI to show how it distributes information to the public generally.[10]

   3. OBTAINING THE REQUESTED RECORDS IS OF NO COMMERCIAL INTEREST TO FGI.

Disclosure is in no way connected with any commercial interest of the requestors. FGI is a non-partisan organization. FGI has no commercial interest and will realize no commercial benefit from the release of the requested records.

   4. FGI IS A REPRESENTATIVE OF THE NEWS MEDIA.

Under FOIA, the term "representative of the news media" includes any person or entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[11]  In *Cause of Action v. Federal Trade Commission*, the Court of Appeals for the District of Columbia broke the test for who is a media entity into five parts: "A requester must: (1) gather information of potential interest (2) to a segment of the public; (3) use its editorial skills to turn the raw materials into a

---

[8] *Carney v U.S. Dept. of Justice*, 19 F.3d 807 (2nd Cir. 1994).
[9] *Judicial Watch*, 326 F.3d at 1314.
[10] *Id.*
[11] 5 U.S.C. § 552(a)(4)(A)(ii).

distinct work; and (4) distribute that work (5) to an audience."[12] [13]

In interpreting this test, the court noted that "the news-media waiver… focuses on the nature of the *requester*, not its request."[14] Accordingly, when a requester "satisfies the five criteria as a general matter, it does not matter whether any of the individual FOIA requests does so."[15]  Moreover, the media entity waiver applies to newer organizations as well as older ones, as the court noted: "there is no indication that Congress meant to make the lack of a prior publication record disqualifying when it enacted the statutory definition in 2007."[16]

### A.   FGI gathers information of potential interest.

FGI's mission is to demand transparency and promote shared values and beliefs in a thriving economy, a government that serves the public, a strong workforce, and a safe and clean environment. As part of this mission, FGI engages in investigations and education initiatives around important issues, including high energy prices, the government's COVID-19 response, and government transparency. These are topics of broad public interest, as evidenced by the fact that multiple news outlets have written stories on FGI's work. You can see several FGI's media mentions at https://functionalgovernment.org/category/media-mentions/.

### B.   FGI gathers information of interest to a segment of the public.

As demonstrated above, the information that FGI gathers is of interest to a segment of the public. This includes but is not limited to the segment of the public concerned with government transparency. The size of the segment of the public interests in any particularly information gathering project may vary, however, as the court has noted, "[a] newspaper reporter, for example, is a representative of the news media regardless of how much interest there is in the story for which he or she is requesting information."[17] Moreover, as long as FGI "satisfies the five criteria as a general matter, it does not matter whether any of the individual FOIA requests does so."[18]

As set forth above, FGI believes that this request is of interest to a reasonably broad segment of the public. Even if the agency disagrees, however, there can be no doubt that other issues about which FGI gathers information, such as drivers of inflation in the United States, energy prices, government transparency and more, are of interest to a significant audience.

Accordingly, FGI is an organization that gathers information of interest to a segment of the population.

### C.   FGI uses its editorial skills to turn raw materials into distinct works.

As the D.C. Circuit Court has stated, "A substantive press release or editorial comment can be a

---

[12] 799 F.3d 1108, 1120 (D.C. Cir. 2015).

[13] The court further noted that "the news-media fee waiver applies only to records that 'are not sought for commercial use.'" *Cause of Action*, 700 F.3d at 1120. For the reasons set forth in section 3 above, FGI is not requesting these records for commercial use.

[14] 799 F.3d 1108, 1120 (D.C. Cir. 2015) at 1121 (emphasis in the original).

[15] *Id.*

[16] *Id.* at 1124.

[17] *Cause of Action*, 799 F.3d at 1121.

[18] *Id.*

distinct work based on the underlying material, just as a newspaper article about the same documents would be — and its composition can involve 'a significant degree of editorial discretion.'"[19] Furthermore, "nothing in principle prevents a journalist from producing 'distinct work' that is based exclusively on documents obtained through FOIA."[20]

FGI is an entity that uses its editorial skills to turn raw materials into distinct works. It routinely issues substantive press releases detailing its activities, posted at functionalgovernment.org. These press releases have included substantive analysis of the information gathered by FGI with a significant degree of editorial discretion. FGI has also prepared detailed reports, posted on its website, and FGI provides substantive editorial comment to other journalists, with many news clips posted on website, as well.

Like a newspaper or other media outlet, FGI uses its editorial skills to turn raw materials into distinct works and intends to do so for other subjects as it gathers additional information. Thus, FGI meets this test.

### D.  FGI distributes its work to an audience.

For purposes of FOIA, "posting content to a public website can qualify as a means of distributing it — notwithstanding that readers have to affirmatively access the content, rather than have it delivered to their doorsteps or beamed into their homes unbidden."[21] Moreover, while "[t]here is no doubt that the requirement that a requester distribute its work to 'an audience' contemplates that the work is distributed to more than a single person... beyond requiring that a person or entity have readers (or listeners or viewers), the statute does not specify what size the audience must be."[22] Additionally, "[t]he fact that [a media entity's] readership is relatively small ... is irrelevant."[23]

Assessing whether a media entity distributes its work to an audience includes consideration of "past record, current operations, and future plans jointly."[24]

In addition, the court rejected "the suggestion that a public interest advocacy organization cannot satisfy the statute's distribution criterion because it is 'more like a middleman for dissemination to the media than a representative of the media itself,'" concluding "there is no indication that Congress meant to distinguish between those who reach their ultimate audiences directly and those who partner with others to do so, as some recognized journalistic enterprises do."[25]

FGI will continue to use its website to distribute original editorial content, including press releases. FGI has email subscribers and intends to establish a greater social media presence to reach its audience directly. In addition, FGI has durable relationships with a broad network of reporters, bloggers, and media publications interested in its content and with whom FGI has partnered to distribute its distinct editorial commentary.

---

[19] *Cause of Action*, 799 F.3d 1122 (quoting *Nat. Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989)).
[20] *Id.*
[21] *Cause of Action*, 799 F.3d at 1123.
[22] *Id*. at 1124 (footnote omitted).
[23] *Id*. at 1124 (quoting *Tax Analysts v. Dept. of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992)).
[24] *Id*. at 1124.
[25] *Id*. at 1125 (citations omitted).

Accordingly, FGI distributes its work to an audience.

**E.   FGI qualifies as a representative of the news media.**

Under the applicable law, a government accountability group such as FGI qualifies as a media organization for purposes of FOIA when it gathers information of potential interest and uses it to create original content, which can be as simple as issuing a press release or comment to other media organizations, and distributes it, which can be as simple as posting it on a website with an audience greater than one. This is true even if an organization does not have a long track record.

Accordingly, under the standard set forth in FOIA and interpreted in *Cause of Action*, FGI clearly qualifies as a representative of the news media.

<u>FGI QUALIFIES FOR A FULL FEE WAIVER.</u>

For all the foregoing reasons, FGI qualifies for a full fee waiver. At minimum, FGI qualifies as a representative of the news media that is exempt from search and production costs. We anticipate that you will promptly grant our fee waiver request and begin to search and disclose the requested records without any unnecessary delays.

Thank you for your prompt attention to this request. If you have any questions, please contact me. Records and any related correspondence should be sent to my attention to the email address below.

Sincerely,


Chris Stanley
Director
Functional Government Initiative
6218 Georgia Avenue NW, Ste 1 - 1235
Washington, DC 20011-5125
chris@functionalgovernment.org

Exhibit D



**SecureRelease™ Portal**

Request Number: CBP-FO-2023-132861

**Details of Request**
(Read only details of request)

CREATE APPEAL    CANCEL

**Request Description:** FGI requests from the United States Customs and Border Protection all records from August 30, 2022, to the date the search begins about wristbands or other similar methods of tracking migrants. The following search terms are provided to aid the search: • Wristbands • Bracelets • Armbands • Identification Markers • Wrist Tags • Wrist Identifiers • Migrant Tags Please search the records of the following custodians: • Former Commissioner, Chris Magnus • Acting Commissioner, Troy Miller • Executive Director of the Office of Intergovernmental Public Liaison, Tim Quinn • Assistant Commissioner, Erin Waters • Chief of Border Patrol, Jason Owens • Former Chief of Border Patrol, Raul Ortiz Please see the request letter for additional details.

**Agency:** Department of Homeland Security

**Component:** U.S. Customs & Border Protection

**Processing Track:** Complex

**Request Type:** FOIA

**Submitted Date:** 09/01/2023

**Request Status:** Initial Determination

**Identity Verification Status:** Not Requested by Agency

**Fee Waiver Requested? :** Pending Decision

**Reason for Fee Waiver:** Please see the letter for full details. Pursuant to 5 U.S.C. § 552 and the relevant FOIA regulations, we request a waiver of fees for searching and producing the records of this request. FOIA provides for a waiver of fees when a request is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." In the letter are details explaining (1) how the disclosure of the requested records is in the public interest, (2) that FGI intends distribute information to a broad audience of interested persons, and (3) that FGI has no commercial interests. In addition, FGI is a "person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience" and thus qualifies as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii). In the letter are details explaining (4) how FGI clearly meets these criteria.

**Expedited Processing?:** Not Requested

**Reason for Expedited Processing:** -

**Files uploaded by user**

Search

| File Name | Attachment Type |
|---|---|
| CBP Wristbands FOIA.pdf | Request Letter |

5 rows    1-1 of 1

Exhibit E



**FUNCTIONAL GOVERNMENT
INITIATIVE**

September 1, 2023

<u>Submitted via</u> https://myaccount.uscis.gov

Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, SW, Stop 5009
Washington, D.C. 20536-5009

Re:     Records relating to colorful wristbands found near the southern border that are used for
human smuggling and trafficking purposes.

Dear Freedom of Information Act Officer:

The Functional Government Initiative (FGI) submits this request for records under the Freedom of
Information Act, 5 U.S.C. § 552, as amended (FOIA), and the relevant implementing regulations of
the Department of Homeland Security. FGI, a non-partisan organization, engages in research,
investigation, and education to promote transparency in government.

Your prompt response pursuant to the requirements of FOIA, 5 U.S.C. § 522(a)(6)(A), is
appreciated.

<u>BACKGROUND</u>

Thousands of colorful wristbands have been found along routes near the southern border with
Mexico where migrants are known to cross illegally into the United States. The wristbands have
been reported to be part of an organizational system used by Mexican cartels to identify groups of
migrants that they smuggle across the border for tracking, repayment, and trafficking purposes.[1]
There is concern amongst the public that drug cartels are developing such identification techniques
to increasingly accrue money and influence to engage in illicit and dangerous activity across the
southern border.

<u>REQUESTED RECORDS</u>

FGI requests from Immigration and Customs Enforcement all records from August 30, 2022, to the
date the search begins about wristbands or other similar methods of tracking migrants. The
following terms are provided to aid the search:

- Wristbands
- Bracelets
- Armbands
- Identification Markers

---

[1] For example, see https://www.borderreport.com/immigration/border-crime/cruz-says-wristbands-smugglers-
use-to-track-migrants-are-like-leg-irons/

- Wrist Tags
- Wrist Identifiers
- Migrant Tags

Please search the records of the following custodians:

- Acting Director, Patrick J. Lechleitner
- Acting Deputy Director, Staci A. Barrera
- Acting Chief of Staff, Deborah Fleischaker
- Executive Associate Director of Homeland Security Investigations, Katrina W. Berger
- Former Director, Tae Johnson

The term "all records" in this request refers to letters, correspondence, emails including attachments, calendars, electronic meeting invitations and replies, facsimiles, memoranda, text messages (including messages on encrypted apps such as Signal or WhatsApp), notes from meetings and phone calls, minutes of meetings, agendas of meetings, comments, files, presentations, consultations, drawings, diagrams, graphs, charts, assessments, evaluations, telephone records and logs, virtual meeting logs (such as those produced by Microsoft Teams and Zoom), papers (published or unpublished), reports, studies, photographs and other images, databases, data, maps, or all other responsive records in draft or final form that fall within the definition of "agency records" subject to FOIA. This request is not meant to exclude any other records that, although not specifically requested, are reasonably related to the subject matter of this request.

We ask that you please provide all records in an electronic format and, to the extent practicable, in native file format or, if not practicable, with full metadata for all fields. FOIA provides that "an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."[2] Please provide records in either a load-ready format with an index in .csv file or Excel spreadsheet, or in PDF format without any portfolios or embedded files and not in a single batched pdf file.

If you should seek to withhold or redact any responsive records, we request that you do the following:

1. Identify each such record with specificity, including date, author, recipient, and parties copied,
2. Explain in full the basis for withholding responsive material,
3. Provide all segregable portions of the records for which you claim a specific exemption[3], and
4. Correlate any redactions with specific exemptions under FOIA.

If you or your office have destroyed or decide to withhold any records that could be reasonably construed to be responsive to this request, please indicate this fact and state the reasons for doing so in your response. Agencies are prohibited from denying requests for information under FOIA unless the agency reasonably believes release of the information will harm an interest that is protected by the exemption.[4]

---

[2] 5 U.S.C. § 552(a)(3)(B).
[3] See 5 U.S.C. § 552(b).
[4] FOIA Improvement Act of 2016 (Public Law No. 114-185), 5 U.S.C. § 552(a)(8)(A).

Should you decide to invoke a FOIA exemption or any subsection (c) exclusions, please include sufficient information for us to assess the basis for the exemption, including any interests that would be harmed by release. Please include a detailed ledger with the following:

1. Basic factual material about each withheld record, including the originator, date, length, general subject matter, and location of each item, and
2. Complete justifications for each withheld records, including the specific exemptions under which the record or portion thereof, was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination. Your written justifications may help to avoid litigation.

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and send the non-exempt portions to my email address below within the statutory time limit.[5]

FGI is willing to receive records on a rolling basis.

To facilitate our request most efficiently, we request that the FOIA office use the agency's email management system as part of the search for this request.

<u>REQUEST FOR FEE WAIVER</u>

Pursuant to 5 U.S.C. § 552 and the relevant FOIA regulations, we request a waiver of fees for searching and producing the requested records. FOIA provides for a waiver of fees when a request is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." [6]

Below are details explaining (1) how the disclosure of the requested records is in the public interest, (2) that FGI intends distribute information to a broad audience of interested persons, and (3) that FGI has no commercial interests.

In addition, FGI is a "person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience" and thus qualifies as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii). Below are details explaining (4) how FGI clearly meets these criteria.

1. <u>THE REQUEST IS IN THE PUBLIC INTEREST.</u>

Under FOIA, an agency must consider factors to determine whether a request is in the public interest. These include the following:

A. Whether the subject of the requested records concerns "the operations or activities of the Federal government,"
B. Whether the disclosure is "likely to contribute significantly" to an understanding of

---

[5] 5 U.S.C. § 552(b).
[6] 5 U.S.C. § 552(a)(4)(A)(iii).

government operations or activities, and

C. Whether the disclosure "will contribute to public understanding" of a reasonably broad audience of persons interested in the subject.

As shown below, FGI meets each of these factors.

**A. The requested records concern the operations and activities of the Federal government.**

This request relates to the operations and activities of federal government. The Department of Justice Freedom of Information Act Guide acknowledges that "in most cases records possessed by a federal agency will meet this threshold."[7] Thus, FGI meets this factor.

**B. Disclosure is "likely to contribute significantly" to an understanding of government operations or activities.**

Disclosure of the requested records is certain to contribute to public understanding of the smuggling of migrants across the southern border. The requested records would give more insight into the growing crisis at our southern border and steps being taken to curb dangerous activity. Once the information is made available, FGI will evaluate the information and present it to its followers and make it available to the public. Once the information is made available, FGI will evaluate the information and present it to its followers and make it available to the public.

FGI is not requesting these records merely for their intrinsic informational value. The public is always well served when it knows how the government conducts its activities, and the requested records would provide insight in how important decisions were made by federal officials. Hence, there can be no dispute that disclosure of the requested records to the public will significantly increasing the public's understanding about the agency's actions and decisions and whether agency actions were conducted in an objective and legal way.

Thus, FGI meets this factor.

**C. Disclosure of the requested records will contribute to the understanding of a reasonably broad audience.**

FGI has the ability and intention to convey this information to a broad audience by means discussed below. A broad audience is following the current state of our border and the potential public safety threat from the smuggling of migrants across the southern border. The requested information would give the public an increased understanding of what actions are being taken by the DHS in response to illicit and dangerous activity.

Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA. Thus, FGI meets this factor.

2. <u>FGI HAS THE ABILITY AND INTENT TO DISSEMINATE THE INFORMATION TO A REASONABLY BROAD AUDIENCE INTERESTED IN THE SUBJECT.</u>

FGI is a non-partisan organization that researches government operations and informs the public

---

[7] https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/fees-feewaivers.pdf

its findings. Access to information about the activities and decisions of government officials is vital to fulfilling this mission. Once the information is obtained, FGI has robust mechanisms in place, including its website, social media channels, and other platforms, to share information. FGI intends to use its channels to publish the information from these requested records, along with expert analysis. FGI also has a broad network of reporters, bloggers, and media publications with interest in its content and with durable relationships with the organization. FGI intends to use these far-reaching media outlets to publicize information obtained from this request.

Through these means, FGI's dissemination of the information will do the following:

- Ensure that the information requested contributes significantly to the public's understanding of the government's operations or activities,
- Ensure that the information enhances the public's understanding to a greater degree than currently exists,
- Demonstrate that FGI possesses the expertise to explain the requested information to the public,
- Demonstrate that FGI possesses the ability to make the requested information accessible to the general public, and
- Demonstrate that the news media recognizes FGI as a reliable source in the relevant fields.

In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject.[8] FGI need not show how it intends to distribute the information, because, as the court noted, "nothing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity."[9] It is sufficient for FGI to show how it distributes information to the public generally.[10]

3. OBTAINING THE REQUESTED RECORDS IS OF NO COMMERCIAL INTEREST TO FGI.

Disclosure is in no way connected with any commercial interest of the requestors. FGI is a non-partisan organization. FGI has no commercial interest and will realize no commercial benefit from the release of the requested records.

4. FGI IS A REPRESENTATIVE OF THE NEWS MEDIA.

Under FOIA, the term "representative of the news media" includes any person or entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[11]  In *Cause of Action v. Federal Trade Commission*, the Court of Appeals for the District of Columbia broke the test for who is a media entity into five parts: "A requester must: (1) gather information of potential interest (2) to a segment of the public; (3) use its editorial skills to turn the raw materials into a

---

[8] *Carney v U.S. Dept. of Justice*, 19 F.3d 807 (2nd Cir. 1994).

[9] *Judicial Watch*, 326 F.3d at 1314.

[10] *Id.*

[11] 5 U.S.C. § 552(a)(4)(A)(ii).

distinct work; and (4) distribute that work (5) to an audience."[12] [13]

In interpreting this test, the court noted that "the news-media waiver... focuses on the nature of the *requester*, not its request."[14] Accordingly, when a requester "satisfies the five criteria as a general matter, it does not matter whether any of the individual FOIA requests does so."[15]  Moreover, the media entity waiver applies to newer organizations as well as older ones, as the court noted: "there is no indication that Congress meant to make the lack of a prior publication record disqualifying when it enacted the statutory definition in 2007."[16]

### A.   FGI gathers information of potential interest.

FGI's mission is to demand transparency and promote shared values and beliefs in a thriving economy, a government that serves the public, a strong workforce, and a safe and clean environment. As part of this mission, FGI engages in investigations and education initiatives around important issues, including high energy prices, the government's COVID-19 response, and government transparency. These are topics of broad public interest, as evidenced by the fact that multiple news outlets have written stories on FGI's work. You can see several FGI's media mentions at https://functionalgovernment.org/category/media-mentions/.

### B.   FGI gathers information of interest to a segment of the public.

As demonstrated above, the information that FGI gathers is of interest to a segment of the public. This includes but is not limited to the segment of the public concerned with government transparency. The size of the segment of the public interests in any particularly information gathering project may vary, however, as the court has noted, "[a] newspaper reporter, for example, is a representative of the news media regardless of how much interest there is in the story for which he or she is requesting information."[17] Moreover, as long as FGI "satisfies the five criteria as a general matter, it does not matter whether any of the individual FOIA requests does so."[18]

As set forth above, FGI believes that this request is of interest to a reasonably broad segment of the public. Even if the agency disagrees, however, there can be no doubt that other issues about which FGI gathers information, such as drivers of inflation in the United States, energy prices, government transparency and more, are of interest to a significant audience.

Accordingly, FGI is an organization that gathers information of interest to a segment of the population.

### C.   FGI uses its editorial skills to turn raw materials into distinct works.

As the D.C. Circuit Court has stated, "A substantive press release or editorial comment can be a

---

[12] 799 F.3d 1108, 1120 (D.C. Cir. 2015).
[13] The court further noted that "the news-media fee waiver applies only to records that 'are not sought for commercial use.'" *Cause of Action*, 700 F.3d at 1120. For the reasons set forth in section 3 above, FGI is not requesting these records for commercial use.
[14] 799 F.3d 1108, 1120 (D.C. Cir. 2015) at 1121 (emphasis in the original).
[15] *Id.*
[16] *Id.* at 1124.
[17] *Cause of Action*, 799 F.3d at 1121.
[18] *Id.*

distinct work based on the underlying material, just as a newspaper article about the same documents would be — and its composition can involve 'a significant degree of editorial discretion.'"[19] Furthermore, "nothing in principle prevents a journalist from producing 'distinct work' that is based exclusively on documents obtained through FOIA."[20]

FGI is an entity that uses its editorial skills to turn raw materials into distinct works. It routinely issues substantive press releases detailing its activities, posted at functionalgovernment.org. These press releases have included substantive analysis of the information gathered by FGI with a significant degree of editorial discretion. FGI has also prepared detailed reports, posted on its website, and FGI provides substantive editorial comment to other journalists, with many news clips posted on website, as well.

Like a newspaper or other media outlet, FGI uses its editorial skills to turn raw materials into distinct works and intends to do so for other subjects as it gathers additional information. Thus, FGI meets this test.

**D. FGI distributes its work to an audience.**

For purposes of FOIA, "posting content to a public website can qualify as a means of distributing it — notwithstanding that readers have to affirmatively access the content, rather than have it delivered to their doorsteps or beamed into their homes unbidden."[21] Moreover, while "[t]here is no doubt that the requirement that a requester distribute its work to 'an audience' contemplates that the work is distributed to more than a single person... beyond requiring that a person or entity have readers (or listeners or viewers), the statute does not specify what size the audience must be."[22] Additionally, "[t]he fact that [a media entity's] readership is relatively small ... is irrelevant."[23]

Assessing whether a media entity distributes its work to an audience includes consideration of "past record, current operations, and future plans jointly."[24]

In addition, the court rejected "the suggestion that a public interest advocacy organization cannot satisfy the statute's distribution criterion because it is 'more like a middleman for dissemination to the media than a representative of the media itself,'" concluding "there is no indication that Congress meant to distinguish between those who reach their ultimate audiences directly and those who partner with others to do so, as some recognized journalistic enterprises do."[25]

FGI will continue to use its website to distribute original editorial content, including press releases. FGI has email subscribers and intends to establish a greater social media presence to reach its audience directly. In addition, FGI has durable relationships with a broad network of reporters, bloggers, and media publications interested in its content and with whom FGI has partnered to distribute its distinct editorial commentary.

---

[19] *Cause of Action*, 799 F.3d 1122 (quoting *Nat. Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989)).
[20] *Id.*
[21] *Cause of Action*, 799 F.3d at 1123.
[22] *Id*. at 1124 (footnote omitted).
[23] *Id*. at 1124 (quoting *Tax Analysts v. Dept. of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992)).
[24] *Id*. at 1124.
[25] *Id*. at 1125 (citations omitted).

Accordingly, FGI distributes its work to an audience.

### E.   FGI qualifies as a representative of the news media.

Under the applicable law, a government accountability group such as FGI qualifies as a media organization for purposes of FOIA when it gathers information of potential interest and uses it to create original content, which can be as simple as issuing a press release or comment to other media organizations, and distributes it, which can be as simple as posting it on a website with an audience greater than one. This is true even if an organization does not have a long track record.

Accordingly, under the standard set forth in FOIA and interpreted in *Cause of Action*, FGI clearly qualifies as a representative of the news media.

<u>FGI QUALIFIES FOR A FULL FEE WAIVER.</u>

For all the foregoing reasons, FGI qualifies for a full fee waiver. At minimum, FGI qualifies as a representative of the news media that is exempt from search and production costs. We anticipate that you will promptly grant our fee waiver request and begin to search and disclose the requested records without any unnecessary delays.

Thank you for your prompt attention to this request. If you have any questions, please contact me. Records and any related correspondence should be sent to my attention to the email address below.

Sincerely,


Chris Stanley
Director
Functional Government Initiative
6218 Georgia Avenue NW, Ste 1 - 1235
Washington, DC 20011-5125
chris@functionalgovernment.org

Exhibit F

10/26/2023

Chris Stanley
6218 Georgia Avenue NW, Ste. 1-1235
Washington, District of Columbia 20011-5125

RE:     ICE FOIA Case Number 2024-ICFO-03615

Dear Requester:

This acknowledges receipt of your 9/1/2023, Freedom of Information Act (FOIA) request to
U.S. Immigration and Customs Enforcement (ICE), for records from August 30, 2022 to
present regarding wristbands or other similar methods of tracking migrants. See request for
details..  Your request was received in this office on 10/25/2023.

Due to the increasing number of FOIA requests received by this office, we may encounter
some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6
C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although
ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does
permit a 10-day extension of this time period. As your request seeks numerous documents
that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day
extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you're able to
narrow the scope of your request please contact our office. Narrowing the scope may
speed up the search process. We will make every effort to comply with your request in a
timely manner.

Provisions of the FOIA allow us to recover part of the cost of complying with your request.
We shall charge you for records in accordance with the DHS Interim FOIA regulations as
they apply to non-commercial requesters.  As a non-commercial requester, you will be
charged 10 cents per page for duplication; the first 100 pages are free, as are the first two
hours of search time, after which you will pay the per quarter-hour rate ($4.00 for clerical
personnel, $7.00 for professional personnel, $10.25 for managerial personnel) of the
searcher.  We will construe the submission of your request as an agreement to pay up to
$25.00. You will be contacted before any further fees are accrued.

We have queried the appropriate program offices within ICE for responsive records. If any
responsive records are located, they will be reviewed for determination of releasability.
Please be assured that one of the processors in our office will respond to your request as
expeditiously as possible. We appreciate your patience as we proceed with your request.

If you have any questions, please contact FOIA Public Liaison, Fernando Pineiro Jr. at the
address above or (866) 633-1182. Additionally, you have a right to seek dispute resolution
services from the Office of Government Information Services (OGIS) which mediates

disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.  You may contact OGIS as follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Your request has been assigned reference number 2024-ICFO-03615. Please use this number in future correspondence.

Sincerely,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message and any disclosure, copying, or distribution of this message, or the taking of any action based on it, by you is strictly prohibited.

Deloitte refers to a Deloitte member firm, one of its related entities, or Deloitte Touche Tohmatsu Limited ("DTTL"). Each Deloitte member firm is a separate legal entity and a member of DTTL. DTTL does not provide services to clients. Please see www.deloitte.com/about to learn more.

v.E.1

Exhibit G



**FUNCTIONAL GOVERNMENT INITIATIVE**

December 19, 2023

<u>Submitted online at https://www.securerelease.us/</u>

Department of Homeland Security
Privacy Office
2707 Martin Luther King Jr. Ave SE
Washington, DC 20528-065

Re:    Records relating to illegal tobacco and vape products

Dear Freedom of Information Act Officer:

The Functional Government Initiative (FGI) submits this request for records under the Freedom of Information Act, 5 U.S.C. § 552, as amended (FOIA), and the relevant implementing regulations of the Department of Homeland Security. FGI, a non-partisan organization, engages in research, investigation, and education to promote transparency in government.

Your prompt response pursuant to the requirements of FOIA, 5 U.S.C. § 522(a)(6)(A), is appreciated.

<u>REQUESTED RECORDS</u>

FGI requests from the Department of Homeland Security, Office of the Secretary, from January 1, 2023, until the date the search begins all records that meet the following criteria:

- All records pertaining to illegal tobacco and vape (also called electronic nicotine delivery systems, ENDS) products.
- All records pertaining to enforcement of the law and current regulations on illegal tobacco and vape products.
- Any records that discuss China or Mexican drug cartels in the context of illegal tobacco and vape products.

Please search the records of the following custodians from the Office of the Secretary:

- Secretary, Alejandro Mayorkas
- Acting Deputy Secretary, John Tien
- Chief of Staff, Marie Chalkley (acting)
- General Counsel, Jonathan E. Meyer
- Assistant Secretary for Public Affairs, Marsha Espinosa
- Under Secretary, Robert Silvers, Office of Strategy, Policy, and Plans
- Deputy Under Secretary, Kelli Ann Burriesci, Office of Strategy, Policy, and Plans
- Assistant Secretary, Border and Immigration Policy, Blas Nuñez-Neto (acting), Office of Strategy, Policy, and Plans

- Assistant Secretary, Counterterrorism and Threat Prevention, Samantha Vinograd (acting), Office of Strategy, Policy, and Plans

- Please also search records from anyone else who may have served in these positions during the time range of this request.

The term "all records" in this request refers to letters, correspondence, emails including attachments, calendars, electronic meeting invitations and replies, facsimiles, memoranda, text messages (including messages on encrypted apps such as Signal or WhatsApp), notes from meetings and phone calls, minutes of meetings, agendas of meetings, comments, files, presentations, consultations, drawings, diagrams, graphs, charts, assessments, evaluations, telephone records and logs, virtual meeting logs (such as those produced by Microsoft Teams and Zoom), papers (published or unpublished), reports, studies, photographs and other images, databases, data, maps, or all other responsive records in draft or final form that fall within the definition of "agency records" subject to FOIA. This request is not meant to exclude any other records that, although not specifically requested, are reasonably related to the subject matter of this request.

We ask that you please provide all records in an electronic format and, to the extent practicable, in native file format or, if not practicable, with full metadata for all fields. FOIA provides that "an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."[1] Please provide records in either a load-ready format with an index in .csv file or Excel spreadsheet, or in PDF format without any portfolios or embedded files and not in a single batched pdf file.

If you should seek to withhold or redact any responsive records, we request that you do the following:

1. Identify each such record with specificity, including date, author, recipient, and parties copied,
2. Explain in full the basis for withholding responsive material,
3. Provide all segregable portions of the records for which you claim a specific exemption[2], and
4. Correlate any redactions with specific exemptions under FOIA.

If you or your office have destroyed or decide to withhold any records that could be reasonably construed to be responsive to this request, please indicate this fact and state the reasons for doing so in your response. Agencies are prohibited from denying requests for information under FOIA unless the agency reasonably believes release of the information will harm an interest that is protected by the exemption.[3]

Should you decide to invoke a FOIA exemption or any subsection (c) exclusions, please include sufficient information for us to assess the basis for the exemption, including any interests that would be harmed by release. Please include a detailed ledger with the following:

1. Basic factual material about each withheld record, including the originator, date, length, general subject matter, and location of each item, and

---

[1] 5 U.S.C. § 552(a)(3)(B).
[2] See 5 U.S.C. § 552(b).
[3] FOIA Improvement Act of 2016 (Public Law No. 114-185), 5 U.S.C. § 552(a)(8)(A).

2. Complete justifications for each withheld records, including the specific exemptions under which the record or portion thereof, was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination. Your written justifications may help to avoid litigation.

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and send the non-exempt portions to my email address below within the statutory time limit.[4]

FGI is willing to receive records on a rolling basis.

To facilitate our request most efficiently, we request that the FOIA office use the agency's email management system as part of the search for this request.

<u>REQUEST FOR FEE WAIVER</u>

Pursuant to 5 U.S.C. § 552 and the relevant FOIA regulations, we request a waiver of fees for searching and producing the requested records. FOIA provides for a waiver of fees when a request is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." [5]

Below are details explaining (1) how the disclosure of the requested records is in the public interest, (2) that FGI intends distribute information to a broad audience of interested persons, and (3) that FGI has no commercial interests.

In addition, FGI is a "person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience" and thus qualifies as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii). Below are details explaining (4) how FGI clearly meets these criteria.

1. <u>THE REQUEST IS IN THE PUBLIC INTEREST.</u>

Under FOIA, an agency must consider factors to determine whether a request is in the public interest. These include the following:

A. Whether the subject of the requested records concerns "the operations or activities of the Federal government,"
B. Whether the disclosure is "likely to contribute significantly" to an understanding of government operations or activities, and
C. Whether the disclosure "will contribute to public understanding" of a reasonably broad audience of persons interested in the subject.

As shown below, FGI meets each of these factors.

**A. The requested records concern the operations and activities of the Federal government.**

---

[4] 5 U.S.C. § 552(b).
[5] 5 U.S.C. § 552(a)(4)(A)(iii).

This request relates to the operations and activities of federal government. The Department of Justice Freedom of Information Act Guide acknowledges that "in most cases records possessed by a federal agency will meet this threshold."[6] Thus, FGI meets this factor.

**B. Disclosure is "likely to contribute significantly" to an understanding of government operations or activities.**

Disclosure of the requested records is certain to contribute to public understanding of how officials at the Department of Homeland Security are communicating about illegal products known to be coming across the border and making it to the market. Once the information is made available, FGI will evaluate the information and present it to its followers and make it available to the public.

FGI is not requesting these records merely for their intrinsic informational value. The public is always well served when it knows how the government conducts its activities, and the requested records would provide insight in how important decisions were made by federal officials. Hence, there can be no dispute that disclosure of the requested records to the public will significantly increasing the public's understanding about the agency's actions and decisions and whether agency actions were conducted in an objective and legal way.

Thus, FGI meets this factor.

**C. Disclosure of the requested records will contribute to the understanding of a reasonably broad audience.**

FGI has the ability and intention to convey this information to a broad audience by means discussed below. A broad segment of the public following efforts to stop illegal products and address the increase in youth usage of certain products, among other related issues, could achieve a greater understanding of the government's effort through the requested records.
Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA. Thus, FGI meets this factor.

2. <u>FGI HAS THE ABILITY AND INTENT TO DISSEMINATE THE INFORMATION TO A REASONABLY BROAD AUDIENCE INTERESTED IN THE SUBJECT.</u>

FGI is a non-partisan organization that researches government operations and informs the public its findings. Access to information about the activities and decisions of government officials is vital to fulfilling this mission. Once the information is obtained, FGI has robust mechanisms in place, including its website, social media channels, and other platforms, to share information. FGI intends to use its channels to publish the information from these requested records, along with expert analysis. FGI also has a broad network of reporters, bloggers, and media publications with interest in its content and with durable relationships with the organization. FGI intends to use these far-reaching media outlets to publicize information obtained from this request.

Through these means, FGI's dissemination of the information will do the following:

- Ensure that the information requested contributes significantly to the public's understanding of the government's operations or activities,

---

[6] https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/fees-feewaivers.pdf

- Ensure that the information enhances the public's understanding to a greater degree than currently exists,
- Demonstrate that FGI possesses the expertise to explain the requested information to the public,
- Demonstrate that FGI possesses the ability to make the requested information accessible to the general public, and
- Demonstrate that the news media recognizes FGI as a reliable source in the relevant fields.

In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject.[7] FGI need not show how it intends to distribute the information, because, as the court noted, "nothing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity."[8] It is sufficient for FGI to show how it distributes information to the public generally.[9]

### 3. OBTAINING THE REQUESTED RECORDS IS OF NO COMMERCIAL INTEREST TO FGI.

Disclosure is in no way connected with any commercial interest of the requestors. FGI is a non-partisan organization. FGI has no commercial interest and will realize no commercial benefit from the release of the requested records.

### 4. FGI IS A REPRESENTATIVE OF THE NEWS MEDIA.

Under FOIA, the term "representative of the news media" includes any person or entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[10]  In *Cause of Action v. Federal Trade Commission*, the Court of Appeals for the District of Columbia broke the test for who is a media entity into five parts: "A requester must: (1) gather information of potential interest (2) to a segment of the public; (3) use its editorial skills to turn the raw materials into a distinct work; and (4) distribute that work (5) to an audience."[11] [12]

In interpreting this test, the court noted that "the news-media waiver... focuses on the nature of the *requester*, not its request."[13] Accordingly, when a requester "satisfies the five criteria as a general matter, it does not matter whether any of the individual FOIA requests does so."[14]  Moreover, the media entity waiver applies to newer organizations as well as older ones, as the court noted: "there is no indication that Congress meant to make the lack of a prior publication record disqualifying when it enacted the statutory definition in 2007."[15]

---

[7] *Carney v U.S. Dept. of Justice*, 19 F.3d 807 (2nd Cir. 1994).

[8] *Judicial Watch*, 326 F.3d at 1314.

[9] *Id.*

[10] 5 U.S.C. § 552(a)(4)(A)(ii).

[11] 799 F.3d 1108, 1120 (D.C. Cir. 2015).

[12] The court further noted that "the news-media fee waiver applies only to records that 'are not sought for commercial use.'" *Cause of Action*, 700 F.3d at 1120. For the reasons set forth in section 3 above, FGI is not requesting these records for commercial use.

[13] 799 F.3d 1108, 1120 (D.C. Cir. 2015) at 1121 (emphasis in the original).

[14] *Id.*

[15] *Id.* at 1124.

### A.   FGI gathers information of potential interest.

FGI's mission is to demand transparency and promote shared values and beliefs in a thriving economy, a government that serves the public, a strong workforce, and a safe and clean environment. As part of this mission, FGI engages in investigations and education initiatives around important issues, including high energy prices, the government's COVID-19 response, and government transparency. These are topics of broad public interest, as evidenced by the fact that multiple news outlets have written stories on FGI's work. You can see several FGI's media mentions at https://functionalgovernment.org/category/media-mentions/.

### B.   FGI gathers information of interest to a segment of the public.

As demonstrated above, the information that FGI gathers is of interest to a segment of the public. This includes but is not limited to the segment of the public concerned with government transparency. The size of the segment of the public interests in any particularly information gathering project may vary, however, as the court has noted, "[a] newspaper reporter, for example, is a representative of the news media regardless of how much interest there is in the story for which he or she is requesting information."[16] Moreover, as long as FGI "satisfies the five criteria as a general matter, it does not matter whether any of the individual FOIA requests does so."[17]

As set forth above, FGI believes that this request is of interest to a reasonably broad segment of the public. Even if the agency disagrees, however, there can be no doubt that other issues about which FGI gathers information, such as drivers of inflation in the United States, energy prices, government transparency and more, are of interest to a significant audience.

Accordingly, FGI is an organization that gathers information of interest to a segment of the population.

### C.   FGI uses its editorial skills to turn raw materials into distinct works.

As the D.C. Circuit Court has stated, "A substantive press release or editorial comment can be a distinct work based on the underlying material, just as a newspaper article about the same documents would be — and its composition can involve 'a significant degree of editorial discretion.'"[18] Furthermore, "nothing in principle prevents a journalist from producing 'distinct work' that is based exclusively on documents obtained through FOIA."[19]

FGI is an entity that uses its editorial skills to turn raw materials into distinct works. It routinely issues substantive press releases detailing its activities, posted at functionalgovernment.org. These press releases have included substantive analysis of the information gathered by FGI with a significant degree of editorial discretion. FGI has also prepared detailed reports, posted on its website, and FGI provides substantive editorial comment to other journalists, with many news clips posted on website, as well.

Like a newspaper or other media outlet, FGI uses its editorial skills to turn raw materials into

---

[16] *Cause of Action*, 799 F.3d at 1121.
[17] *Id.*
[18] *Cause of Action*, 799 F.3d 1122 (quoting *Nat. Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989)).
[19] *Id.*

distinct works and intends to do so for other subjects as it gathers additional information. Thus, FGI meets this test.

### D. FGI distributes its work to an audience.

For purposes of FOIA, "posting content to a public website can qualify as a means of distributing it — notwithstanding that readers have to affirmatively access the content, rather than have it delivered to their doorsteps or beamed into their homes unbidden."[20] Moreover, while "[t]here is no doubt that the requirement that a requester distribute its work to 'an audience' contemplates that the work is distributed to more than a single person... beyond requiring that a person or entity have readers (or listeners or viewers), the statute does not specify what size the audience must be."[21] Additionally, "[t]he fact that [a media entity's] readership is relatively small ... is irrelevant."[22]

Assessing whether a media entity distributes its work to an audience includes consideration of "past record, current operations, and future plans jointly."[23]

In addition, the court rejected "the suggestion that a public interest advocacy organization cannot satisfy the statute's distribution criterion because it is 'more like a middleman for dissemination to the media than a representative of the media itself,'" concluding "there is no indication that Congress meant to distinguish between those who reach their ultimate audiences directly and those who partner with others to do so, as some recognized journalistic enterprises do."[24]

FGI will continue to use its website to distribute original editorial content, including press releases. FGI has email subscribers and intends to establish a greater social media presence to reach its audience directly. In addition, FGI has durable relationships with a broad network of reporters, bloggers, and media publications interested in its content and with whom FGI has partnered to distribute its distinct editorial commentary.

Accordingly, FGI distributes its work to an audience.

### E. FGI qualifies as a representative of the news media.

Under the applicable law, a government accountability group such as FGI qualifies as a media organization for purposes of FOIA when it gathers information of potential interest and uses it to create original content, which can be as simple as issuing a press release or comment to other media organizations, and distributes it, which can be as simple as posting it on a website with an audience greater than one. This is true even if an organization does not have a long track record.

Accordingly, under the standard set forth in FOIA and interpreted in *Cause of Action*, FGI clearly qualifies as a representative of the news media.

<u>FGI QUALIFIES FOR A FULL FEE WAIVER.</u>

For all the foregoing reasons, FGI qualifies for a full fee waiver. At minimum, FGI qualifies as a

---

[20] *Cause of Action*, 799 F.3d at 1123.
[21] *Id.* at 1124 (footnote omitted).
[22] *Id.* at 1124 (quoting *Tax Analysts v. Dept. of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992)).
[23] *Id.* at 1124.
[24] *Id.* at 1125 (citations omitted).

representative of the news media that is exempt from search and production costs. We anticipate that you will promptly grant our fee waiver request and begin to search and disclose the requested records without any unnecessary delays.

Thank you for your prompt attention to this request. If you have any questions, please contact me. Records and any related correspondence should be sent to my attention to the email address below.

Sincerely,


Chris Stanley
Director
Functional Government Initiative
6218 Georgia Avenue NW, Ste 1 - 1235
Washington, DC 20011-5125
chris@functionalgovernment.org

Exhibit H



**U.S. Department of Homeland Security**
Washington, DC 20528

December 28, 2023

SENT VIA E-MAIL TO:  chris@functionalgovernment.org

Chris Stanley
Functional Government Initiative
6218 Georgia Avenue NW, Ste 1 - 1235
Washington, District of Columbia 20011-5125

Re:  2024-HQFO-00460

Dear Requester:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request to the
Department of Homeland Security (DHS), dated 12/19/2023, and to your request for [expedited
handling and] a waiver of all assessable FOIA fees.  Our office received your request on
12/19/2023.  Specifically, you requested 1) all records pertaining to illegal tobacco and vape
(also called electronic nicotine delivery systems, ENDS) products, 2) all records pertaining to
enforcement of the law and current regulations on illegal tobacco and vape products and, 3) any
records that discuss China or Mexican drug cartels in the context of illegal tobacco and vape
products for the officials you provided.

Due to the increasing number of FOIA requests received by this office, we may encounter some
delay in processing your request.  Consistent with 6 C.F.R. Part 5 § 5.5(a) of the DHS FOIA
regulations, the Department processes FOIA requests according to their order of receipt.
Although DHS' goal is to respond within 20 business days of receipt of your request, FOIA does
permit a 10-day extension of this time period in certain circumstances under 6 C.F.R. Part 5 §
5.5(c). As your request seeks documents that will require a thorough and wide-ranging search,
DHS will invoke a 10-day extension for your request pursuant to 6 C.F.R. Part 5 § 5.5(c).  If you
would like to narrow the scope of your request, please contact our office.  We will make every
effort to comply with your request in a timely manner.

You have requested a fee waiver.  The DHS FOIA regulations at 6 C.F.R. Part 5 § 5.11(k) set
forth six factors DHS must evaluate to determine whether the applicable legal standard for a fee
waiver has been met:  (1) Whether the subject of the requested records concerns "the operations
or activities of the government," (2) Whether the disclosure is "likely to contribute" to an
understanding of government operations or activities, (3) Whether disclosure of the requested
information will contribute to the understanding of the public at large, as opposed to the
individual understanding of the requester or a narrow segment of interested persons, (4) Whether
the contribution to public understanding of government operations or activities will be
"significant," (5) Whether the requester has a commercial interest that would be furthered by the
requested disclosure, and (6) Whether the magnitude of any identified commercial interest to the

requester is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requester.

Upon review of the subject matter of your request, and an evaluation of the six factors identified above, DHS has determined that it will conditionally grant your request for a fee waiver.  The fee waiver determination will be based upon a sampling of the responsive documents received from the various DHS program offices as a result of the searches conducted in response to your FOIA request.  DHS will, pursuant to DHS FOIA regulations applicable to non-commercial requesters, provide two hours of search time and process the first 100 pages at no charge to you.  If upon review of these documents, DHS determines that the disclosure of the information contained in those documents does not meet the factors permitting DHS to waive the fees, then DHS will at that time either deny your request for a fee waiver entirely, or will allow for a percentage reduction in the amount of the fees corresponding to the amount of relevant material found that meets the factors allowing for a fee waiver.  In either case, DHS will promptly notify you of its final decision regarding your request for a fee waiver and provide you with the responsive records as required by applicable law.

In the event that your fee waiver is denied, and you determine that you still want the records, provisions of the FOIA allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the DHS FOIA regulations as they apply to non-commercial requesters.  As a non-commercial requester you will be charged for any search time and duplication beyond the free two hours and 100 pages mentioned in the previous paragraph.  You will be charged 10 cents per page for duplication and search time at the per quarter-hour rate ($4.00 for clerical personnel, $7.00 for professional personnel, $10.25 for managerial personnel) of the searcher.  In the event that your fee waiver is denied, we will construe the submission of your request as an agreement to pay up to $25.00.  This office will contact you before accruing any additional fees.

We have queried the appropriate component(s) of DHS for responsive records.  If any responsive records are located, they will be reviewed for determination of releasability.  Please be assured that one of the analysts in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number 2024-HQFO-00460.  Please refer to this identifier in any future correspondence. If you have any questions, or would like to discuss this matter, please feel free to contact this office at 1-866-431-0486 or 202-343-1743.

Sincerely,

Jimmy Wolfrey
Senior Director, FOIA Operations and Management

Exhibit I



**FUNCTIONAL GOVERNMENT
INITIATIVE**

December 19, 2023

<u>Submitted online at https://www.securerelease.us/</u>

United States Immigration & Customs Enforcement
FOIA Office
500 12th Street, SW, Stop 5009
Washington, DC 20536-5009

Re:     Records relating to illegal tobacco and vape products

Dear Freedom of Information Act Officer:

The Functional Government Initiative (FGI) submits this request for records under the Freedom of
Information Act, 5 U.S.C. § 552, as amended (FOIA), and the relevant implementing regulations of
the Department of Homeland Security. FGI, a non-partisan organization, engages in research,
investigation, and education to promote transparency in government.

Your prompt response pursuant to the requirements of FOIA, 5 U.S.C. § 522(a)(6)(A), is
appreciated.

<u>REQUESTED RECORDS</u>

FGI requests from the Department of Homeland Security, Customs and Immigration Enforcement,
from January 1, 2023, until the date the search begins all records that meet the following criteria:

- All records pertaining to illegal tobacco and vape (also called electronic nicotine delivery
  systems, ENDS) products.
- All records pertaining to enforcement of the law and current regulations on illegal tobacco
  and vape products.
- Any records that discuss China or Mexican drug cartels in the context of illegal tobacco and
  vape products.

Please search the records of the following custodians from the Office of the Secretary:

- Acting Director, Patrick J. Lechleitner
- Acting Deputy Director, Staci A. Barrera
- Former Acting Chief of Staff, Deborah Fleischaker
- Chief of Staff, Michael D. Lumpkin
- Executive Associate Director of Homeland Security Investigations, Katrina W. Berger
- Former Acting Director, Tae Johnson

- Please also search records from anyone else who may have served in these positions during
  the time range of this request.

The term "all records" in this request refers to letters, correspondence, emails including

attachments, calendars, electronic meeting invitations and replies, facsimiles, memoranda, text messages (including messages on encrypted apps such as Signal or WhatsApp), notes from meetings and phone calls, minutes of meetings, agendas of meetings, comments, files, presentations, consultations, drawings, diagrams, graphs, charts, assessments, evaluations, telephone records and logs, virtual meeting logs (such as those produced by Microsoft Teams and Zoom), papers (published or unpublished), reports, studies, photographs and other images, databases, data, maps, or all other responsive records in draft or final form that fall within the definition of "agency records" subject to FOIA. This request is not meant to exclude any other records that, although not specifically requested, are reasonably related to the subject matter of this request.

We ask that you please provide all records in an electronic format and, to the extent practicable, in native file format or, if not practicable, with full metadata for all fields. FOIA provides that "an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."[1] Please provide records in either a load-ready format with an index in .csv file or Excel spreadsheet, or in PDF format without any portfolios or embedded files and not in a single batched pdf file.

If you should seek to withhold or redact any responsive records, we request that you do the following:

1. Identify each such record with specificity, including date, author, recipient, and parties copied,
2. Explain in full the basis for withholding responsive material,
3. Provide all segregable portions of the records for which you claim a specific exemption[2], and
4. Correlate any redactions with specific exemptions under FOIA.

If you or your office have destroyed or decide to withhold any records that could be reasonably construed to be responsive to this request, please indicate this fact and state the reasons for doing so in your response. Agencies are prohibited from denying requests for information under FOIA unless the agency reasonably believes release of the information will harm an interest that is protected by the exemption.[3]

Should you decide to invoke a FOIA exemption or any subsection (c) exclusions, please include sufficient information for us to assess the basis for the exemption, including any interests that would be harmed by release. Please include a detailed ledger with the following:

1. Basic factual material about each withheld record, including the originator, date, length, general subject matter, and location of each item, and
2. Complete justifications for each withheld records, including the specific exemptions under which the record or portion thereof, was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination. Your written justifications may help to avoid litigation.

If you determine that portions of the records requested are exempt from disclosure, we request

---

[1] 5 U.S.C. § 552(a)(3)(B).
[2] See 5 U.S.C. § 552(b).
[3] FOIA Improvement Act of 2016 (Public Law No. 114-185), 5 U.S.C. § 552(a)(8)(A).

that you segregate the exempt portions and send the non-exempt portions to my email address below within the statutory time limit.[4]

FGI is willing to receive records on a rolling basis.

To facilitate our request most efficiently, we request that the FOIA office use the agency's email management system as part of the search for this request.

REQUEST FOR FEE WAIVER

Pursuant to 5 U.S.C. § 552 and the relevant FOIA regulations, we request a waiver of fees for searching and producing the requested records. FOIA provides for a waiver of fees when a request is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." [5]

Below are details explaining (1) how the disclosure of the requested records is in the public interest, (2) that FGI intends distribute information to a broad audience of interested persons, and (3) that FGI has no commercial interests.

In addition, FGI is a "person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience" and thus qualifies as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii). Below are details explaining (4) how FGI clearly meets these criteria.

1. <u>THE REQUEST IS IN THE PUBLIC INTEREST.</u>

Under FOIA, an agency must consider factors to determine whether a request is in the public interest. These include the following:

A. Whether the subject of the requested records concerns "the operations or activities of the Federal government,"
B. Whether the disclosure is "likely to contribute significantly" to an understanding of government operations or activities, and
C. Whether the disclosure "will contribute to public understanding" of a reasonably broad audience of persons interested in the subject.

As shown below, FGI meets each of these factors.

**A. The requested records concern the operations and activities of the Federal government.**

This request relates to the operations and activities of federal government. The Department of Justice Freedom of Information Act Guide acknowledges that "in most cases records possessed by a federal agency will meet this threshold."[6] Thus, FGI meets this factor.

**B. Disclosure is "likely to contribute significantly" to an understanding of government**

---

[4] 5 U.S.C. § 552(b).
[5] 5 U.S.C. § 552(a)(4)(A)(iii).
[6] https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/fees-feewaivers.pdf

3

**operations or activities.**

Disclosure of the requested records is certain to contribute to public understanding of how officials at the Department of Homeland Security are communicating about illegal products known to be coming across the border and making it to the market. Once the information is made available, FGI will evaluate the information and present it to its followers and make it available to the public.

FGI is not requesting these records merely for their intrinsic informational value. The public is always well served when it knows how the government conducts its activities, and the requested records would provide insight in how important decisions were made by federal officials. Hence, there can be no dispute that disclosure of the requested records to the public will significantly increasing the public's understanding about the agency's actions and decisions and whether agency actions were conducted in an objective and legal way.

Thus, FGI meets this factor.

**C. Disclosure of the requested records will contribute to the understanding of a reasonably broad audience.**

FGI has the ability and intention to convey this information to a broad audience by means discussed below. A broad segment of the public following efforts to stop illegal products and address the increase in youth usage of certain products, among other related issues, could achieve a greater understanding of the government's effort through the requested records.
Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA. Thus, FGI meets this factor.

2. FGI HAS THE ABILITY AND INTENT TO DISSEMINATE THE INFORMATION TO A REASONABLY BROAD AUDIENCE INTERESTED IN THE SUBJECT.

FGI is a non-partisan organization that researches government operations and informs the public its findings. Access to information about the activities and decisions of government officials is vital to fulfilling this mission. Once the information is obtained, FGI has robust mechanisms in place, including its website, social media channels, and other platforms, to share information. FGI intends to use its channels to publish the information from these requested records, along with expert analysis. FGI also has a broad network of reporters, bloggers, and media publications with interest in its content and with durable relationships with the organization. FGI intends to use these far-reaching media outlets to publicize information obtained from this request.

Through these means, FGI's dissemination of the information will do the following:

- Ensure that the information requested contributes significantly to the public's understanding of the government's operations or activities,
- Ensure that the information enhances the public's understanding to a greater degree than currently exists,
- Demonstrate that FGI possesses the expertise to explain the requested information to the public,
- Demonstrate that FGI possesses the ability to make the requested information accessible to the general public, and
- Demonstrate that the news media recognizes FGI as a reliable source in the relevant fields.

4

In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject.[7] FGI need not show how it intends to distribute the information, because, as the court noted, "nothing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity."[8] It is sufficient for FGI to show how it distributes information to the public generally.[9]

### 3. OBTAINING THE REQUESTED RECORDS IS OF NO COMMERCIAL INTEREST TO FGI.

Disclosure is in no way connected with any commercial interest of the requestors. FGI is a non-partisan organization. FGI has no commercial interest and will realize no commercial benefit from the release of the requested records.

### 4. FGI IS A REPRESENTATIVE OF THE NEWS MEDIA.

Under FOIA, the term "representative of the news media" includes any person or entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[10]  In *Cause of Action v. Federal Trade Commission*, the Court of Appeals for the District of Columbia broke the test for who is a media entity into five parts: "A requester must: (1) gather information of potential interest (2) to a segment of the public; (3) use its editorial skills to turn the raw materials into a distinct work; and (4) distribute that work (5) to an audience."[11] [12]

In interpreting this test, the court noted that "the news-media waiver… focuses on the nature of the *requester*, not its request."[13] Accordingly, when a requester "satisfies the five criteria as a general matter, it does not matter whether any of the individual FOIA requests does so."[14]  Moreover, the media entity waiver applies to newer organizations as well as older ones, as the court noted: "there is no indication that Congress meant to make the lack of a prior publication record disqualifying when it enacted the statutory definition in 2007."[15]

### A.  FGI gathers information of potential interest.

FGI's mission is to demand transparency and promote shared values and beliefs in a thriving economy, a government that serves the public, a strong workforce, and a safe and clean environment. As part of this mission, FGI engages in investigations and education initiatives around important issues, including high energy prices, the government's COVID-19 response, and government transparency. These are topics of broad public interest, as evidenced by the fact that multiple news outlets have written stories on FGI's work. You can see several FGI's media mentions

---

[7] *Carney v U.S. Dept. of Justice*, 19 F.3d 807 (2nd Cir. 1994).

[8] *Judicial Watch*, 326 F.3d at 1314.

[9] *Id.*

[10] 5 U.S.C. § 552(a)(4)(A)(ii).

[11] 799 F.3d 1108, 1120 (D.C. Cir. 2015).

[12] The court further noted that "the news-media fee waiver applies only to records that 'are not sought for commercial use.'" *Cause of Action*, 700 F.3d at 1120. For the reasons set forth in section 3 above, FGI is not requesting these records for commercial use.

[13] 799 F.3d 1108, 1120 (D.C. Cir. 2015) at 1121 (emphasis in the original).

[14] *Id.*

[15] *Id.* at 1124.

at https://functionalgovernment.org/category/media-mentions/.

**B. FGI gathers information of interest to a segment of the public.**

As demonstrated above, the information that FGI gathers is of interest to a segment of the public. This includes but is not limited to the segment of the public concerned with government transparency. The size of the segment of the public interests in any particularly information gathering project may vary, however, as the court has noted, "[a] newspaper reporter, for example, is a representative of the news media regardless of how much interest there is in the story for which he or she is requesting information."[16] Moreover, as long as FGI "satisfies the five criteria as a general matter, it does not matter whether any of the individual FOIA requests does so."[17]

As set forth above, FGI believes that this request is of interest to a reasonably broad segment of the public. Even if the agency disagrees, however, there can be no doubt that other issues about which FGI gathers information, such as drivers of inflation in the United States, energy prices, government transparency and more, are of interest to a significant audience.

Accordingly, FGI is an organization that gathers information of interest to a segment of the population.

**C. FGI uses its editorial skills to turn raw materials into distinct works.**

As the D.C. Circuit Court has stated, "A substantive press release or editorial comment can be a distinct work based on the underlying material, just as a newspaper article about the same documents would be — and its composition can involve 'a significant degree of editorial discretion.'"[18] Furthermore, "nothing in principle prevents a journalist from producing 'distinct work' that is based exclusively on documents obtained through FOIA."[19]

FGI is an entity that uses its editorial skills to turn raw materials into distinct works. It routinely issues substantive press releases detailing its activities, posted at functionalgovernment.org. These press releases have included substantive analysis of the information gathered by FGI with a significant degree of editorial discretion. FGI has also prepared detailed reports, posted on its website, and FGI provides substantive editorial comment to other journalists, with many news clips posted on website, as well.

Like a newspaper or other media outlet, FGI uses its editorial skills to turn raw materials into distinct works and intends to do so for other subjects as it gathers additional information. Thus, FGI meets this test.

**D. FGI distributes its work to an audience.**

For purposes of FOIA, "posting content to a public website can qualify as a means of distributing it — notwithstanding that readers have to affirmatively access the content, rather than have it

---

[16] *Cause of Action*, 799 F.3d at 1121.

[17] *Id.*

[18] *Cause of Action*, 799 F.3d 1122 (quoting *Nat. Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989)).

[19] *Id.*

delivered to their doorsteps or beamed into their homes unbidden."[20] Moreover, while "[t]here is no doubt that the requirement that a requester distribute its work to 'an audience' contemplates that the work is distributed to more than a single person… beyond requiring that a person or entity have readers (or listeners or viewers), the statute does not specify what size the audience must be."[21] Additionally, "[t]he fact that [a media entity's] readership is relatively small ... is irrelevant."[22]

Assessing whether a media entity distributes its work to an audience includes consideration of "past record, current operations, and future plans jointly."[23]

In addition, the court rejected "the suggestion that a public interest advocacy organization cannot satisfy the statute's distribution criterion because it is 'more like a middleman for dissemination to the media than a representative of the media itself,'" concluding "there is no indication that Congress meant to distinguish between those who reach their ultimate audiences directly and those who partner with others to do so, as some recognized journalistic enterprises do."[24]

FGI will continue to use its website to distribute original editorial content, including press releases. FGI has email subscribers and intends to establish a greater social media presence to reach its audience directly. In addition, FGI has durable relationships with a broad network of reporters, bloggers, and media publications interested in its content and with whom FGI has partnered to distribute its distinct editorial commentary.

Accordingly, FGI distributes its work to an audience.

### E.  FGI qualifies as a representative of the news media.

Under the applicable law, a government accountability group such as FGI qualifies as a media organization for purposes of FOIA when it gathers information of potential interest and uses it to create original content, which can be as simple as issuing a press release or comment to other media organizations, and distributes it, which can be as simple as posting it on a website with an audience greater than one. This is true even if an organization does not have a long track record.

Accordingly, under the standard set forth in FOIA and interpreted in *Cause of Action*, FGI clearly qualifies as a representative of the news media.

<u>FGI QUALIFIES FOR A FULL FEE WAIVER.</u>

For all the foregoing reasons, FGI qualifies for a full fee waiver. At minimum, FGI qualifies as a representative of the news media that is exempt from search and production costs. We anticipate that you will promptly grant our fee waiver request and begin to search and disclose the requested records without any unnecessary delays.

Thank you for your prompt attention to this request. If you have any questions, please contact me. Records and any related correspondence should be sent to my attention to the email address below.

---

[20] *Cause of Action*, 799 F.3d at 1123.
[21] *Id*. at 1124 (footnote omitted).
[22] *Id*. at 1124 (quoting *Tax Analysts v. Dept. of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992)).
[23] *Id*. at 1124.
[24] *Id*. at 1125 (citations omitted).

Sincerely,


Chris Stanley
Director
Functional Government Initiative
6218 Georgia Avenue NW, Ste 1 - 1235
Washington, DC 20011-5125
chris@functionalgovernment.org

Exhibit J

On Jan 3, 2024, at 12:51 PM, ice-foia@ice.dhs.gov <noreply@securerelease.us> wrote:

01/03/2024

Chris Stanley
6218 Georgia Avenue NW, Ste. 1-1235
Washington, District of Columbia 20011-5125

RE:    ICE FOIA Case Number 2024-ICFO-10841

Dear Requester:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated 12/19/2023, and to your request for a waiver of all assessable FOIA fees. Your request was received in this office on 12/19/2023. Specifically, you requested FGI requests from the Department of Homeland Security, Customs and Immigration Enforcement, from January 1, 2023, until the date the search begins all records that meet the following criteria: All records pertaining to illegal tobacco and vape (also called electronic nicotine delivery systems, ENDS) products. All records pertaining to enforcement of the law and current regulations on illegal tobacco and vape products. Any records that discuss China or Mexican drug cartels in the context of illegal tobacco and vape products.  Please search the records of the following custodians from the Office of the Secretary: Acting Director, Patrick J. Lechleitner; Acting Deputy Director, Staci A. Barrera; Former Acting Chief of Staff, Deborah Fleischaker; Chief of Staff, Michael D. Lumpkin; Executive Associate Director of Homeland Security Investigations, Katrina W. Berger; Former Acting Director, Tae Johnson.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10- day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you're able to narrow the scope of your request please contact our office. Narrowing the scope may speed up the search process. We will make every effort to comply with your request in a timely manner.

ICE evaluates fee waiver requests under the legal standard set forth above and the fee waiver policy guidance issued by the Department of Justice on April 2, 1987, as incorporated into the Department of Homeland Security's Freedom of Information Act

regulations.  These regulations set forth six factors to examine in determining whether the applicable legal standard for fee waiver has been met.  I have considered the following factors in my evaluation of your request for a fee waiver:

(1) Whether the subject of the requested records concerns "the operations or activities of the government";
(2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;
(3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;
(4) Whether the contribution to public understanding of government operations or activities will be "significant";
(5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and
(6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

Upon review of your request and a careful consideration of the factors listed above, I have determined to grant your request for a fee waiver.

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

If you have any questions please contact FOIA Public Liaison, Daniel Edgington at the address above or (866) 633-1182.  Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.  You may contact OGIS as follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448.

Your request has been assigned reference number 2024-ICFO-10841. Please use this number in future correspondence.

Sincerely,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009